**FILED**
**Aug 06, 2026**
**12:15 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | |
|---|---|
| **Aaron Rudisill,**<br>    **Employee,**<br>**v.**<br>**Boze Logging, Inc.,**<br>    **Employer,**<br>**and**<br>**Clarendon Nat'l Ins. Co.,**<br>    **Carrier.** | **Docket No. 2016-06-0683**<br><br><br>**State File No. 86190-2015**<br><br><br>**Judge Kenneth M. Switzer** |

## COMPENSATION ORDER GRANTING MEDICAL BENEFITS

In this post-judgment claim, Aaron Rudisill seeks an order that Boze Logging authorize stem-cell treatment under an open-medical benefits provision of a settlement agreement. Medical proof showed that the authorized treating physician referred Mr. Rudisill to a neurology specialist, which referral Boze Logging repeatedly disregarded. The Court held a compensation hearing on August 4, 2026, and now finds that Mr. Rudisill has shown by a preponderance of the evidence that the doctor made a valid referral, which Boze Logging must honor.

### Facts

Mr. Rudisill injured his back and spine at work on September 29, 2014, and later underwent fusion surgery. The parties settled the claim with open medical benefits.

In late 2023, Mr. Rudisill began experiencing decreased stability and increased pain in his low back and buttocks, along with numbness and stabbing pain in his left foot. At a February 2024 authorized visit with a nurse practitioner, he was referred to a "neurological surgeon."

1

Rather than offering a panel of neurosurgeons, Boze Logging sent Mr. Rudisill to an orthopedist, the current panel-selected physician, Dr. Roy Terry.

Mr. Rudisill reported low-back and leg pain at the first visit with Dr. Terry in April 2024, as well as bowel and urinary incontinence and progressive weakness in both legs. Dr. Terry documented "significant right lower extremity weakness" and ordered diagnostic testing. An MRI revealed "myelomalacia . . . at the T12 level within the thoracic cord from prior injury."

Over the next several months, Dr. Terry repeatedly referred Mr. Rudisill for specialized treatment. In July, Dr. Terry assessed progressive focal motor weakness, right-calf atrophy, and other chronic pain. He wrote, "We will *refer* the patient to Dr. [Barton] Huddleston at Vanderbilt neurology about possible myelomalacia with possible treatment plans with stem cells." (Emphasis added). In August, and after reviewing the EMG results, Dr. Terry wrote, "we will re-send *the referral* for the patient to see Dr. Huddleston with Vanderbilt neurology about possible myelomalacia with possible treatment plans with stem cells." (Emphasis added). In October, he again noted the referral to Dr. Huddleston and wrote, "REFERRAL TO DR. HUDDLESTON WAS MADE AT LAST VISIT." (Emphasis in original).

Mr. Rudisill did not see Dr. Huddleston or receive a panel of specialists. Notes from his next visit with Dr. Terry in January 2025 explained, "We attempted to refer the patient to physician Dr. Huddleston for possible myelomalacia with possible treatment plans with stem cells, but he does not do this procedure." Dr. Terry continued:

> We are working on finding a provider who performs this procedure. In reality I am not really looking for the procedure of stem-cell itself. I am looking for someone who would be able to [say] what kind of regeneration capacity might be able to be done for someone who [has] myelomalacia[.]

Mr. Rudisill received written information from Kellum Stem Cell Institute in March, and he later discussed the documentation at a visit with Dr. Terry in May. As the plan, Dr. Terry wrote; "Recommendation for treatment with stem cell treatment and physical therapy. This gentleman did go to two separate sites for evaluation for stem cell and feels that the Kellum stem cell facility is optimal."

Afterward, Boze Logging requested utilization review, asking, "[I]s the requested Stem Cell treatment . . . medically necessary?" The reviewing physician

did not certify the suggested treatment on May 29, 2025, and Mr. Rudisill and Dr. Terry did not appeal.

In September, Dr. Terry repeated his "recommendation for treatment with stem-cell treatment and physical therapy." However, at that time, the utilization review noncertification remained in effect under Tennessee Compilation Rules and Regulations 0800-02-06-.06(9)(a) (2022).

At the final visit in February 2026, Dr. Terry wrote:

The patient does have the possibility of improvement only with some type of treatment with stem cells that may help to improve his condition in his spinal cord but certainly are not guaranteed to do so. I do not find evidence of any of the normal methods of moderate medicine able to find significant benefit for him. . . . It is my opinion within a reasonable degree of medical certainty that this gentleman [is] unlikely to improve with any kind of regular medical treatment. If it is possible I believe it would be reasonable to consider an attempt at treatment with more forward types of treatment which may be able to be of benefit. This treatment may include stem cell type treatment.

Boze Logging then deposed Dr. Terry in June, at which time Dr. Terry agreed that he "recommended that he seek further recommendation on stem cell care or stem cell treatment." Dr. Terry further agreed that stem cell treatment is not his "primary area of practice." The following relevant exchange occurred:

Q: Now, during your treatment of Mr. Rudisill, you noted you needed someone else to opine as to some stem cells and the regeneration capacity for someone who has myelomalacia, as you were uncertain to the updates in that area?

A:` Yeah, myelomalacia. Yeah. It's a spinal cord degeneration. And yes, I did request that some information be sent and that I'd have someone call me about what the capacities were that they felt they could accomplish with him.

Boze Logging also introduced a C-32 based on a records review by Dr. Jeffrey Hazlewood, who stated that stem-cell treatment is not reasonable or necessary.

At trial, Mr. Rudisill testified to his worsening instability and weakness. He sought an appointment with a specialist and potentially stem-cell treatment.

## Findings of Fact and Conclusions of Law

Mr. Rudisill bears the burden of proof and must show by a preponderance of the evidence that he is entitled to the requested benefits. Tenn. Code Ann. § 50-6-239(c)(6) (2025).

The Workers' Compensation Law requires an employer to furnish "medical treatment "ordered by the attending physician . . . made reasonably necessary by accident[.]" *Id.* § 50-6-204(a)(1)(A). Subdivision 50-6-204(a)(3)(ii) continues that when necessary, a treating physician chosen from a panel "shall make referrals to a specialist physician[.] . . . The employer shall be deemed to have accepted the referral, unless the employer, within three (3) business days, provides the employee a panel of three (3) or more independent reputable [specialist] physicians[.]"

Regulations echo this subdivision. Tennessee Compilation Rules and Regulations 0800-02-01-.06(8) (2018) states that when "the authorized treating physician, selected by the employee from an initial panel, refers the employee for specialized care, the employer shall be deemed to have accepted the referral, unless the employer, within three (3) business days, provides a panel of three (3) or more independent reputable physicians[.]"

Under section 50-6-204(a)(3)(H), once the panel-selected physician makes a referral to a specialist, it is presumed to be medically necessary. *Beech v. G4S Secure Solutions (USA), Inc.,* 2020 TN Wrk. Comp. App. Bd. LEXIS 71, at *9-10 (Dec. 16, 2020). Further, the Appeals Board emphasized that employers must either timely honor a direct referral or offer a panel of specialists within three business days when a panel physician makes a referral. *See Rhodes v. Amazon.com,* 2019 TN Wrk. Comp. App. Bd. LEXIS 24, at *14 (June 11, 2019) ("[t]he statutory scheme . . . contemplates direct referrals to specialists and provides employers the option of accepting the referrals or, instead, providing a panel of specialists[.]").

The facts and law in *Beech* are similar to this case. In *Beech,* an authorized physician referred the employee to a psychiatrist or a neuropsychologist, but the employer did not timely offer a panel of specialists from either field. Instead, it sent the authorized doctor a letter asking if the employee needs the referral primarily as a result of the alleged injury. The doctor wrote no. After an expedited hearing, the trial court held that the employer must offer a specialist panel based on the referral. The Board affirmed, reasoning:

4

The issue is not whether Employee has come forward with sufficient evidence to convince the trial court that the referral was medically necessary or that his alleged psychological injury is causally related to the work incident. That was not Employee's burden to prove at that stage of the case. Instead, *the relevant issue is whether Employee came forward with sufficient proof from which the trial court could conclude a panel-selected treating physician made a referral to a specialist.*

*Beech,* 2020 TN Wrk. Comp. App. Bd. LEXIS 71 at *9 (Emphasis added).

Here, the standard is higher—Mr. Rudisill must show by "a preponderance of the evidence" that a panel-selected physician made a specialist referral. He met that burden.

Boze Logging repeatedly ignored referrals in this case. The nurse practitioner initially referred Mr. Rudisill for treatment with a "neurological surgeon." Boze Logging did not offer a panel of neurosurgeons. Instead, it offered a panel of orthopedists, and Mr. Rudisill chose Dr. Terry. Afterward, Dr. Terry unambiguously made three direct referrals to Dr. Huddleston. Boze Logging once again did not set an appointment with Dr. Huddleston or offer a panel of specialists for several months.

At the most recent visit in February 2026, Dr. Terry "recommended" stem-cell treatment after trying other courses of treatment with little success. His notes are lengthy and detailed, and he is clearly concerned about finding relief for Mr. Rudisill's myelomalacia.

Dr. Terry repeated this "recommendation" at his deposition very recently. However, the doctor clarified that he wanted a professional within another area of specialization to give an opinion "about what the capacities were that they felt they could accomplish with him." The Court interprets the doctor's words to find that he actually *made a referral* to a specialist capable of treating Mr. Rudisill's myelomalacia.

By ignoring the referrals and instead focusing on the reasonable necessity of stem-cell treatment, Boze Logging acted as though a specialist in the treatment of myelomalacia has recommended stem-cell treatment. But to date, no referral physician has done this, because Boze Logging has not provided a panel of specialists.

Therefore, the evidence preponderates in Mr. Rudisill's favor for specialized medical treatment of myelomalacia. Boze Logging must offer a panel of specialists. Mr. Rudisill remains entitled to future reasonable, necessary, and work-related medical benefits under the settlement order.

The Court additionally refers Boze Logging to the Compliance Program under section 50-6-118(a)(8) and (11) for imposition of penalties for its failure to timely provide medical treatment made reasonably necessary by the accident and recommended by the authorized treating physician, and for its wrongful failure to satisfy terms of an approved settlement, specifically the open medical benefits provision.

The $150.00 filing fee is taxed to Boze Logging, to be paid to the Court Clerk under Tennessee Compilation Rules and Regulations 0800-02-21-.06 (2026) within five business days, and for which execution might issue if necessary. Unless appealed, this order becomes final 30 days after issuance.

IT IS ORDERED.

**ENTERED August 6, 2026.**

_Kenneth M. Switzer_

**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1) C-32 Dr. Terry
2) Dr. Terry's deposition transcript
3) Medical records
4) C-32 Dr. Hazlewood

# CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on August 6, 2026.

| Name | Regular mail | Email | Sent to |
|---|---|---|---|
| Aaron Rudisill, employee | X | X | ██████████████████ ████████ ████████ |
| David Goudie, employer's attorney | | X | dgoudie@morganakins.com |

_____

Penny Shrum
Clerk, Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1.  Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    ➤ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    ➤ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
    When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3.  You are responsible for ensuring a complete record is presented on appeal.  If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk.  The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted.  For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4.  After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

    **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable.  See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____          ☐ Motion Order filed on _____

☐ Compensation Order filed on_____          ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

### Parties
**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*